United States District Court
for the
Southern District of Florida

| | |
|---|---|
| mCom IP, LLC, Plaintiff, | ) ) |
| v. | ) ) Civil Action No. 23-23427-Civ-Scola ) |
| City National Bank of Florida, Defendant. | ) ) |

**Order Granting Motion to Dismiss**

This matter is before the Court on Defendant City National Bank of Florida's motion to dismiss the amended complaint. (ECF No. 30.) The Plaintiff has responded (ECF No. 32), and the Defendant has filed a reply (ECF No. 33). The Court has considered the briefing, the record, the relevant legal authorities, and is otherwise fully advised. The Court **grants** the Defendant's motion to dismiss for the reasons discussed below. (**ECF No. 30**.)

1. **Background**

This case concerns the Defendant, City National Bank of Florida, allegedly infringing a patent relating to what the Plaintiff claims are "novel and improved systems and methods for constructing a unified banking system." (Am. Compl., ECF No. 26 ¶ 9.) City National is a bank based in Coral Gables, Florida, and the Plaintiff, mCom IP, LLC is a Texas limited liability company that owns the relevant patent by assignment. (*Id.* ¶¶ 1-2, 6.) On October 14, 2014, the U.S. Patent and Trademark Office issued U.S. Patent No. 8,862,508 (the "'508 Patent"), entitled "System and method for unifying e-banking touch points and providing personalized financial services." (*Id.* ¶ 6.) The '508 Patent's abstract describes it as a "system and method for delivering a retail banking multi-channel solution that unifies interactive electronic banking touch points to provide personalized financial services to customers and a common point of control for financial institutions . . . ." ('508 Patent, ECF No. 26-1 at 2.)

For purposes of the motion to dismiss, the Court accepts the facts in the amended complaint as true and construes them in the light most favorable to the Plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). The amended complaint alleges that the Defendant has infringed claims 2, 8, 14, and 17 of the '508 Patent. (Am. Compl. ¶ 10.) The Plaintiff attaches a claim chart that aims to provide support for its allegations that City National "maintains, operates, and administers systems, products, and services of

unified banking systems that infringes one or more of claims of the '508 patent, including one or more of claims 2, 8, 14, and 17," which consists of screenshots of City National's website accompanied by text from the '508 Patent. (*Id.* ¶ 10.) According to the amended complaint, City National has also induced infringement of and contributorily infringed the '508 Patent by "actively encourage[ing] or instruct[ing] others (e.g., its customers and/or the customers of its related companies), and continues to do so, on how to construct a unified banking system of one or more of claims 2, 7, 14, and 17 of the '508 patent . . . ." (*Id.* ¶ 12.)

On February 8, 2023, the Patent Trial and Appeal Board ("PTAB") issued a final written decision in a separate proceeding challenging the patentability of claims 1, 3-7, 9-13, 15, 16, and 18-20 of the '508 Patent. *Unified Patents, LLC v. mCom IP, LLC*, IPR2022-00055, Final Written Decision (PTAB Feb. 8, 2023).[1] The PTAB concluded that claims 1, 3-7, 9-13, 15, 16, and 18-20 are obvious and therefore unpatentable. *Id.* at 38-40. mCom failed to appeal the decision, and those claims were canceled. "[W]hen a claim is cancelled, the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes moot." *Sanofi-Aventis U.S., LLC v. Dr. Reddy's Laboratories, Inc.*, 933 F.3d 1367, 1373 (Fed. Cir. 2019) (citing *Fresenius USA, Inc. v. Baxeter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013)). The patent's remaining claims, which went unchallenged in the PTAB proceedings, are at issue here.

The Court previously struck the Plaintiff's complaint on the grounds that the complaint constituted an impermissible shotgun pleading. (ECF No. 25.) The Plaintiff then filed the amended complaint. (ECF No. 26.) City National now argues that the amended complaint should be dismissed because it remains a shotgun pleading, fails to state a claim for either direct or indirect patent infringement, and because the Plaintiff has not alleged patentable subject matter. (ECF No. 30.)

### 2. Legal Standard

A court considering a motion to dismiss, filed under Federal Rule of Civil Procedure 12(b)(6), must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to

---

[1] The Court can take judicial notice of PTAB documents. *Viskase Corp. v. Am. Nat. Can Co.*, 261 F.3d 1316, 1328 n.2 (Fed. Cir. 2001).

state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)) (cleaned up). A court must dismiss a plaintiff's claims if she fails to nudge her "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### 3. Analysis

City National argues that mCom has failed to plead infringement because claims 2, 8, 14, and 17 of the '508 Patent depend upon claims that the PTAB has already canceled for obviousness, and regardless, that the pleadings are devoid of factual support connecting City National to the alleged patented technology. Furthermore, according to the Defendant, even if the '508 Patent's claims were patentable, the amended complaint still constitutes an impermissible shotgun pleading because it comingles claims for direct and indirect (contributory and induced) patent infringement into one single count generally titled "INFRINGEMENT." (Mot. at 8-9.)

The Court agrees with City National that the amended complaint does not comply with pleading standards and fails to distinguish claims 2, 8, 14, and 17 from the invalid patent claims that canceled by the PTAB. The Court considers each asserted claim in turn.

### A. Claims 2 and 8

City National argues that the infringement claims relating to claims 2 and 8 must be dismissed because they depend upon canceled claims 1 and 7, respectively, and do not add patentable subject matter to those claims. City National also argues that neither the amended complaint nor the claims chart make factual allegations tying any method practiced by the Defendant to any element of claims 2 (including underlying claim 1) or 8 (including underlying claim 7). (Mot. at 10-11.) City National is correct on both fronts, and as a threshold matter, the Court may consider the validity of the '508 Patent's claims at the motion to dismiss stage. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 719 (Fed. Cir. 2014); *Sanderling Mgmt. v. Snap Inc.*, 65 F.4th 698, 704 (Fed. Cir. 2023).

Claim 2 is dependent from claim 1, which consists of:

> "A method for constructing a unified electronic banking environment, said method comprising the steps of:

> providing at least one common multi-channel server coupled to more than one e-banking touch points and also coupled to at least one computer system configured with at least one control console, said more than one e-banking touch points and said at least one computer system being provided in locations remote from the other, and further wherein said more than one plurality of e-banking touch points are comprised of at least two different types of e-banking touch point devices, each of which comprise one or more of an automatic teller/transaction machine (ATM), a self service coin counter (SSCC), a kiosk, a digital signage display, an online accessible banking website, a personal digital assistant (PDA), a personal computer (PC), a laptop, a wireless device, or a combination of two or more thereof, and wherein at least one of said e-banking touch points is in communication with one or more financial institutions through said multi-channel server;
>
> receiving an actionable input from at least one e-banking touch point;
>
> retrieving previously stored data associated with said actionable input, wherein said previously stored data is accessible to any one of said e-banking touch points, and said previously stored data comprises data from one or more financial institutions and one or more user-defined preferences;
>
> delivering said retrieved data to said at least one e-banking touch point transmitting said actionable input;
>
> storing transactional usage data associated with said at least one e-banking touch point transmitting said actionable input, wherein said stored transactional usage data is accessible by any one of said more than one e-banking touch points and said at least one computer system;
>
> monitoring via said server an active session in real-time for selection of targeted marketing content correlated to said user-defined preferences;
>
> subsequent to said monitoring, selecting in real-time said targeted marketing content correlated to said user-defined preferences; and
>
> transmitting in real-time said targeted marketing content during said active session to at least one of said e-banking touch points for acceptance, rejection, or no response by a user, wherein said response by said user is used during said active session to determine whether transmission of additional information related to said marketing content occurs during said active session." ('508 Patent at 8:44-9:24.)

Claim 2 adds the following limitation to the above: "The method of claim 1, wherein said stored transactional usage data is stored in association with a customer profile." (*Id.* at 9:25-26.) The PTAB declared claim 1 invalid, and claim 2's limitation of the storage method described in claim 1 to "transactional

usage data [] stored in association with a customer profile" does not add any non-obvious content that could make claim 2 patentable independent of claim 1. The Plaintiff does not address this argument or even mention the PTAB decision in its response, arguing only that the Court should rely on a 2022 decision from the Western District of Texas to deny City National's motion to dismiss. (Resp. at 16-17.) The Plaintiff does not explain why the PTAB's 2023 invalidation of the claims from which claims 2, 4, 13, and 17 depend would not affect the analysis, effectively conceding the argument. *Guzman v. City of Hialeah*, No. 15-23985-CIV, 2016 WL 3763055, at *3 (S.D. Fla. July 14, 2016) (Gayles, J.) ("A plaintiff who, in her responsive brief, fails to address her obligation to object to a point raised by the defendant implicitly concedes that point."); *Covington v. Arizona Beverage Co.*, LLC, No. 08-21894-CIV, 2009 WL 10668916, at *6 (S.D. Fla. Sept. 11, 2009) (Seitz, J.) ("Plaintiff has tacitly conceded the merits of Defendants' argument by not responding to it."). The Court therefore agrees with City National that claim 2 does not refer to patentable subject matter.

Even if claim 2 was patentable, neither the amended complaint nor the claim chart makes a factual allegation regarding City National's storing of transactional usage data in association with a customer profile. The claim chart does not mention claim 2, and the amended complaint does not make any factual allegations regarding claim 2. The Plaintiff has therefore failed to state an infringement claim with respect to claim 2 of the '508 Patent.

The same applies to claim 8, which is dependent from claim 7. Just as in claim 2, claim 8 adds the limitation of "wherein said stored transactional usage data is stored in association with a customer profile" to claim 7 (also invalidated by the PTAB), which is:

> "A method for constructing a unified electronic banking environment, said method comprising the steps of:
>
> providing a common multi-channel server coupled to one or more e-banking touch points and also coupled to one or more computer systems, wherein each computer system is associated with a financial institution, said e-banking touch points being provided in locations remote from the other, and each of which comprise one or more of an automatic teller/transaction machine (ATM), a self-service coin counter (SSCC), a kiosk, a digital signage display, an online accessible banking website, a personal digital assistant (PDA), a personal computer (PC), a laptop, a wireless device, or a combination of two or more thereof, and wherein at least one of said e-banking touch points is in communication with one or more financial institutions through said multi-channel server;

>receiving an actionable input from at least one e-banking touch point;
>
>retrieving previously stored data associated with said actionable input, wherein said previously stored data is accessible to any one of said e-banking touch points, and said previously stored data comprises data from one or more financial institutions and one or more user-defined preferences;
>
>delivering said retrieved data to said at least one e-banking touch point transmitting said actionable input;
>
>storing transactional usage data associated with said at least one e-banking touch point transmitting said actionable input, wherein said stored transactional usage data is accessible by any one of said e-banking touch points and said one or more computer systems;
>
>monitoring via said server said active session in real-time for selection of targeted marketing content correlated to said user-defined preferences;
>
>subsequent to said monitoring, selecting in real-time said targeted marketing content correlated to said user-defined preferences; and
>
>transmitting in real-time said targeted marketing content during said active session to at least one of said e-banking touch points for acceptance, rejection, or no response by a user, wherein said response by said user is used during said active session to determine whether transmission of additional information related to said marketing content occurs during said active session." ('508 Patent at 9:41-10:18.)

Claim 8's language addition of "wherein said stored transactional usage data is stored in association with a customer profile" (*Id.* at 10:19-20) does not create patentable subject matter, nor has the Plaintiff pleaded any facts in the amended complaint or claim chart connecting City National's activities to the elements of claims 7 or 8. Nor has the Plaintiff rebutted City National's argument regarding the claims' invalidity following the PTAB decision. Therefore, the Plaintiff has not pleaded infringement with respect to claims 2 or 8 of the '508 Patent.

### B. Claims 14 and 17

City National argues that claims 14 and 17 each depend on the patentability of claim 13, which the PTAB invalidated, and are therefore themselves invalid. (Mot. at 19-20.) Claim 13 recites:

>"A unified electronic banking system, said system comprising:
>
>a common multi-channel server, wherein said multi-channel server is communicatively coupled to one or more independent computer systems;

> wherein each of one or more independent computer systems is associated with an independent financial institution, and each of said computer systems is communicatively coupled to said multi-channel server;
>
> one or more e-banking touch points, each of which comprise one or more of an automatic teller/transaction machine (ATM), a self-service coin counter (SSCC), a kiosk, a digital signage display, an online accessible banking website, a personal digital assistant (PDA), a personal computer (PC), a laptop, a wireless device, or a combination of two or more thereof, wherein one or more of said e-banking touch points are communicatively coupled to said multi-channel server, and wherein at least one of said e-banking touch points is in communication with one or more financial institutions through said multi-channel server; and
>
> a data storage device, wherein transactional usage data associated with a transaction initiated by a user through one of said e-banking touch points is stored in said data storage device and accessed by one or more of said other e-banking touch points;
>
> wherein said active session is monitored via said server in real-time for selection of targeted marketing content correlated to said user-defined preferences, said targeted marketing content correlated to said user-defined preferences is selected subsequent to said monitoring and transmitted in real-time to at least one of said e-banking touch points for acceptance, rejection, or no response by a user, and wherein said response by said user is used during said active session to determine whether transmission of additional information related to said marketing content occurs during said active session." ('508 Patent at 10:35-11:4.)

As with claims 2 and 8, claim 14 adds to claim 13: "The system of claim 13, wherein said stored transactional usage data is stored in association with a customer profile." (*Id.* at 11:5-7.) Claim 17 recites: "The system of claim 13, wherein said system provides said one or more financial institutions with a common point of control of functionality provided by said system." (*Id.* at 11:15-17.) Thus, the only distinction between claims 13 and 17 is "a common point of control of functionality provided by" the system described in claim 13. Again, this does not add patentable substance to claim 13.

Further, claim 17 is the sole asserted claim to appear in the Plaintiff's claim chart, but the claim chart still does little to support the Plaintiff's arguments. The claim chart provides screenshots of portions of City National's website alongside excerpts from claim 13, apparently attempting to allege that various parts of City National's website have infringed elements of claim 13. (*See generally* Claim Chart, ECF No. 26-2.) However, the claim chart is difficult (if not impossible) to parse on its own, and the Plaintiff's bare assertions in its

response to City National's motion that the screenshots in the claim chart "literally specify the claimed functions" of claim 13, are unpersuasive. (*See* Resp. at 8-14.) The amended complaint offers no further explanation of the infringement allegations presented therein, and a plaintiff "cannot assert a plausible claim for infringement under the *Iqbal*/*Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements." *Bot M8 LLC v. Sony Corporation of America*, 4 F.4th 1342, 1352 (Fed. Cir. 2021). Instead, over half of the amended complaint contains improper legal argument rather than factual allegations. The Plaintiff has therefore failed to allege City National's infringement of claims 2, 8, 14, or 17 of the '508 Patent.

### 4. Conclusion

For the reasons discussed above, the Court **grants** the Defendant's motion to dismiss the amended complaint. (**ECF No. 30**.)

Further, the Court dismisses the Plaintiff's complaint **without leave to amend**, denying the request made in the conclusion of the Plaintiff's response to the motion to dismiss. (Pl.'s Resp. at 23.) The request is both procedurally defective and lacking in any substantive support. "Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." *Cita Tr. Co. AG v. Fifth Third Bank*, 879 F.3d 1151, 1157 (11th Cir. 2018) (quoting *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009)) (alteration in original). Additionally, "[a] request for a court order must be made by motion." Fed. R. Civ. P. 7(b)(1). And it must "state with particularity the grounds for seeking the order[,] and state the relief sought." *Id.* The Plaintiff only raised the request in its response to the motion to dismiss and never via motion. (*See* Pl.'s Resp. at 9.) In addition to the Plaintiff's failure to properly request leave to amend, she had the opportunity to amend as a matter of course up until 21 days after the Defendant filed its response to the complaint and failed to do so. Fed. R. Civ. P. 15(a)(1)(B).

The Clerk is directed to **close** this case. Any pending motions are denied as moot.

**Done and ordered** in Miami, Florida, on June 7, 2024.

_____
Robert N. Scola, Jr.
United States District Judge