UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-23427-Civ-Scola/Lett

**MCOM IP LLC**,

    Plaintiff,

v.

**CITY NATIONAL BANK OF FLORIDA**,

    Defendant.

_____/

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR ATTORNEY'S FEES

**THIS CAUSE** is before the Court pursuant to a referral from District Judge Robert N. Scola of Defendant City National Bank of Florida's Motion for Attorney's Fees and Costs against the Plaintiff mCom IP LLC ("Motion for Attorney's Fees", ECF No. 38) under 35 U.S.C. § 285, 28 U.S.C. § 1927, and the Court's Order Striking Plaintiff's Complaint [ECF No. 25]. [ECF No. 50.] This matter arises out of a patent infringement action brought by the Plaintiff for an alleged infringement of U.S. Patent No. 8,862,508 (the '508 Patent). The Defendant requests an award of attorney's fees in the amount of $72,508.52 in their original Motion for Attorney's Fees, with an additional $12,097.50 for work after the filing of that Motion. The Defendant also requests an additional $2,225 in costs and the three hours of preparation for the Hearing held on the Motion [ECF No. 53], for a total of $87,111.

For the reasons mentioned below, the Court recommends that the District Court grant Defendant's Motion for Attorney's Fees.

I. **Background**

Plaintiff filed its Complaint on September 8, 2023, alleging one count of Patent Infringement of the '508 Patent. [ECF No. 1]. In the Prayer for Relief in this Complaint, Plaintiff requested the Court to declare the case to be "exceptional" within the framework of 35 U.S.C. § 285 in order to be awarded its attorneys' fees, expenses, and costs. Compl. at 5. The Defendant file a Motion to Dismiss on December 11, 2023 [ECF No. 16], but before it was ruled upon, on its own motion, the District Court struck the Plaintiff's Complaint as a shotgun pleading on February 13, 2024, giving the Plaintiff leave to amend its pleadings. [ECF No. 25].

Plaintiff filed an Amended Complaint on February 26, 2024, *see* Pl.'s First Amend. Compl. [ECF No. 26], in which Plaintiff again requested for the Court to declare the case "exceptional" under 35 U.S.C. 285 and award attorneys' fees incurred as a part of the case. *Id.* at 16. Defendant filed a Motion to Dismiss [ECF No. 30]. Part of the basis for the Motion to Dismiss lies in the '508 Patent itself. On February 8, 2023, the U.S. Patent and Trademark Office's Patent Trial and Appeal Board issued a Final Written Decision, determining that claims 1, 3-7, 9-13, 15, 16, and 18-20 of the '508 Patent were unpatentable. *See Unified Patents, LLC v. mCom IP, LLC*, IPR2022-00055, Final Written Decision (PTAB Feb. 8, 2023) [ECF No. 30-1].[1] Importantly, the remaining claims of 2, 8, 14, and 17 all rely on other claims that were dismissed in the 2023 opinion of the Patent Trial and Appeal Board. *See* Mot. Dismiss at 9-11, 13-20. In their Response, Plaintiff relies on a Western District of

---

[1] The Court is permitted to take judicial notice of PTAB documents. *Viskase Corp. v. Am. Nat. Can Co.*, 261 F.3d 1316, 1328 n. 2 (Fed. Cir. 2001).

Texas opinion denying a motion to dismiss involving the 508 Patent. *See* Pl's Resp. at 12 (citing *mCom IP, LLC v. WoodForest Nat'l Bank*, 6:21-cv-989, 2022 WL 22870277 (W.D. Tex. April 14, 2022)). However, the *WoodForest* decision pre-dated the PTAB decision, which is why, among other reasons, the District Court dismissed Plaintiff's Amended Complaint without leave to amend. *See* Order Granting Motion to Dismiss [ECF No. 34]. Plaintiff filed an appeal with the Eleventh Circuit on the District Court's opinion that is currently pending. [ECF No. 36].

For the duration of the litigation, Victoria Brient, Esq. has been the only counsel of record for Plaintiff. However, "[w]ith the exception of a hand full of telephone conferrals and participation in the initial case conference under Fed. R. Civ. P. 26" as well as "email communications about mutual extensions of time and selection of mediators," the case was actually litigated by mCom's national lead counsel, William Ramey, Esq. Decl. of Salvatore Fazio ("Fazio Decl.") ¶ 7 [ECF No. 38-1]. Attorney William Ramey from RAMEY LLC, a law firm based in Houston, Texas, never entered an appearance or moved for pro hac vice admission.

Following dismissal, the Defendant filed the subject Motion for Attorney's Fees, requesting that the Court find the case "extraordinary" and grant an award of attorney's fees pursuant to 35 U.S.C. § 285, while also requesting attorney's fees for vexatious litigation under 28 U.S.C. § 1927. Defendant based this request on several points: (1) the "shotgun pleading" that occurred in the case, (2) the PTAB decision and the resulting lack of patentable subject matter that made the pleadings

3

inherently unreasonable, and (3) the motivation for bringing the action was purely to extract a settlement. [ECF No. 38].

As to the first point, the Defendant noted the *sua sponte* dismissal from the Court on the initial Complaint, and the subsequent dismissal of the Amended Complaint without leave to amend. As to the second, Defendant detailed the history of the mCom patent and its failure in PTAB, as well as the District Court's analysis of the inherently intertwined patent material in the Complaint that relied on claims that had been dismissed. As to the third, Defendant noted the myriad claims from mCom across various courts that ended consistently in either voluntary dismissal or settlement in the pleadings stage, and none proceeded to trial or ever even reached an adjudication by summary judgment. Fazio Decl. ¶ 9. Defendant also emphasized its on-going communication with mCom about the existence of a license agreement with Defendant's vendor, NCR, for the patented process. *Id.* ¶¶ 10-14. mCom, through its attorney William Ramey, previously litigated a case with NCR, which ended in a stipulated dismissal in 2021. *See mCom IP, LLC v. NCR Corporation*, No. 6:21-CV-00325 (W.D. Tex. filed Apr. 5, 2021). Despite its many requests to Mr. Ramey directly, who has been acting as de facto lead counsel in this matter, Defendant obtained the license between NCR and mCom and, pursuant to an order of this Court [ECF No. 53], filed it under seal [ECF No. 54] in the present case after obtaining it through its own independent efforts through subpoena and with no assistance from mCom.

In its Response, Plaintiff argued: 1) that the Motion filed by Defendant was untimely, 2) the case itself does not qualify as "exceptional" for purposes of Section

285, and 3) Section 1927 sanctions are not warranted. *See* Resp. Mot. Award of Attorneys' Fees & Costs [ECF No. 42]. As to timeliness, Plaintiff asserts Section 285 and Federal Rule of Civil Procedure 54(d)(2)(E) preclude the Local Rules that permit a 60-day window to file for attorney's fees. *Id.* at 12. Despite the previous assertions that the case was "exceptional," Plaintiff argued extensively in their Response that this case is no longer "exceptional," but rather ordinary and simple. *Id.* at p. 16-23. In refuting the propriety of Section 1927 sanctions, Plaintiff relied on the argument that it conducted an adequate pre-suit investigation, it attempted to revise its complaint consistent with the District Court's Order, and that Defendant's citation to the myriad suits by mCom on this patent that resolved quickly did not establish an abusive pattern of litigation. *Id.* at 17-19. Plaintiff relied predominantly on the failure of CNBFL to produce the license agreement from NCR at various stages of the litigation, ignoring any pre-suit investigation that could have been done by them given Ramey and mCom's previous litigation with NCR. *Id.* at 12-15.

## II.  Analysis

As a preliminary matter, the Court notes that under 28 U.S.C. § 1295, the United States Court of Appeals for the Federal Circuit would have jurisdiction over any appellate matter arising from these patent claims. *See Imagineering, Inc. v. Van Klassens, Inc.*, 53 F.3d 1260, 1263 (Fed. Cir. 1995) (finding that an appeal of a 35 U.S.C § 285 award of attorney's fees after the underlying patent claim terminated was appropriately heard in the Federal Circuit). While this Court is ordinarily bound by the decisions of the Eleventh Circuit, because an appeal would be heard in the

5

Federal Circuit, this Court applies the law that would be applied by that court. *See Ventrassist Pty Ltd. v. Heartware, Inc.*, 377 F. Supp. 2d 1278, 1282 (S.D. Fla. 2005) (citing *American Household Products, Inc. v. Evans Mfg., Inc.*, 139 F. Supp. 2d 1235, 1239 (N.D. Ala. 2001)).

### A. 35 U.S.C. § 285 Attorney's Fees

The party seeking attorney's fees bears the burden of establishing entitlement to those fees. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Under 35 U.S.C. § 285, trial courts are given the discretion to award attorney's fees and costs in patent cases to a prevailing party in "exceptional cases." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014) provides guidance regarding what constitutes an "exceptional case." The Court overturned the previous structure to determine "exceptional" cases under 35 U.S.C. § 285 found within *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378 (Fed. Cir. 2005), and instead established a less-rigid framework to apply to patent litigation to award attorney's fees. *See Octane Fitness, LLC*, 572 U.S. at 548. The Court in *Octane* noted that the previous framework allowed for attorney's fees to be awarded only in instances of "litigation-related misconduct of an independently sanctionable magnitude or determines that the litigation was both 'brought in subjective bad faith' and 'objectively baseless.'" *Id.* at 555 (citing to *Brooks*, 393 F.3d at 1381). The standard set forth in *Octane* now allows for an award of attorney's fees in which a party's unreasonable conduct, while not independently sanctionable, is nonetheless so "exceptional" to justify a fee award. *Id.* Similarly, the Court in *Octane* found that the second category of fee awards was too

restrictive in requiring both objectively baseless litigation *and* that the litigation was brought in bad faith. *Id*.

Pursuant to *Octane*, trial courts now view Section 285 attorney's fees motions through the lens of a simple discretionary inquiry, imposing no specific evidentiary burden. *See id*. at 557. Thus, the litigation in these patent-based disputes is governed by a preponderance of the evidence standard. *Id*. at 557-58.

Courts have since established general guidelines to follow in applying the *Octane* "exceptional" standard. This framework is not precise, but provides "several suggestions that might guide a district court's discretionary decision." *See id*. (citing *Univ. of Utah v. Max-Plank-Gesellschaft zur Foerderung der Wissenschaften e.V.*, 851 F. 3d 1317, 1323 (Fed. Cir. 2017)). "There is no per se rule that a case is exceptional if litigation costs exceed the potential damages." *AEN Int'l Co. v. Uniclass Tech. Co.*, 932 F.3d 1371, 1373 (Fed. Cir. 2019). Rather, the district court must determine if, under the totality of the circumstances of a case, the case stands out "with respect to the substantive strength of a party's litigating position or the unreasonable manner in in which the case was litigated." *Intell. Ventures I LLC v. Trend Micro Inc.*, 944 F.3d 1380, 1384 (Fed. Cir. 2019). A "district court has discretion, in an appropriate case, to find a case exceptional based on a single, isolated act." *Id.*

Cases in the Federal Circuit can be used to draw factual parallels to the case at hand in how to apply this discretionary standard. In *Bayer CropScience AG v. Dow AgroSciences LLC*, 851 F.3d 1302, 1303-05 (Fed. Cir. 2017), the court found the plaintiffs' litigation conduct unreasonable based on their "contorted reading" of an

7

agreement, their failure to perform a diligent pre-suit investigation of their claims, and a frivolous motion for a preliminary injunction. In *Lumen View Tech., LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 483 (Fed. Cir. 2016), the plaintiff's allegations were ill-supported and unfounded, particularly in light of the parties' communications and claim constructions. Perhaps most guiding, in *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 963 F.3d 1371, 1377 (Fed. Cir. 2020), the Federal Circuit reversed a denial of awards to the defendant. In that case, plaintiff attempted to enforce a patent on a generically described computer system, and the district court granted judgement on the pleadings to the defendant after conducting the appropriate *Alice Corp. Party Ltd. v. CLS Bank International*, 573 U.S. 208 (2014) analysis on abstract ideas. *Id.* at 1374-75. In the subsequent litigation on the defendant's motion for attorney's fees, the defendant cited evidence that the plaintiff sent standardized demand letters and filed repeated patent infringement actions (a total of more than 150 defendants) for the purpose of obtaining low-value "license fees" and forcing settlements. *Id.* at 1375. The Federal Circuit found that the pattern of filing copious amounts of patent infringement suits, requesting a low-value settlement, and failure to proceed in litigation past the claim construction hearings "indicates the use of litigation to achieve quick settlement with no intention of testing the strength of the patent or its allegations of infringement." *Id.* at 1377.

     The present case falls squarely within the standard set by the *Octane* Court for the award of attorney's fees. The District Court ruled in favor of the Defendant in the Order Granting Defendant's Motion to Dismiss, so the Defendant is clearly the

prevailing party in the case. Given the previous ruling of the Patent and Trial Board on the underlying application, while not every claim was dismissed, every independent claim was dismissed requiring Plaintiff to have considered the viability of the present litigation in light of the PTAB's ruling. Additionally, having the licensee agreement with NCR and the previous litigation conducted by William Ramey should have put the Plaintiff on notice that the claim would not pass muster. As the Defendant points out, in its initial pleadings, Plaintiff asserted that this case was "exceptional" and therefore worthy of a fee multiplier. It is only after its loss that the case has now become "ordinary." Furthermore, the District Court determined that the original pleadings merited dismissing as a "shotgun" pleading, and even after being given leave to file an amended complaint, Plaintiff still failed to present a case to sufficiently satisfy the Fed. R. Civ. P. 12(b)(6) burden. Given the standard set forth in *Octane*, the precedent found within the Federal Circuit for "extraordinary" cases in patent law, and the facts present in this case, the Court finds that the action here does qualify as "extraordinary" and the Defendant as the prevailing party is entitled to attorney's fees.

### B. 28 U.S.C. § 1927 Attorney's Fees

The Defendant also requested an award of attorney's fees under 28 U.S.C. § 1927, alleging liability for excessive costs due to vexatious litigation. An award of Section 1927 fees requires three things: 1) that the attorney engaged in unreasonable and vexatious conduct, 2) that the conduct itself multiplied the proceedings, and 3) that the dollar amount of the sanction must bear a financial nexus to the excess

proceedings. *See Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997). Determining "bad faith" for purposes of a Section 1927 claim requires a court to look objectively at the conduct of the attorney, not the attorney's subjective intent, to determine if the actions of the attorney represent an intentional or reckless disregard to the attorney's duties to the court. *See Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1282 (11th Cir. 2010).

The Defendant cites to *Phonometrics, Inc. v. ITT Sheraton Corp.*, 64 F. App'x. 219 (Fed. Cir. 2003) (*Phonometrics I*), to support its claim for Section 1927 sanctions. In *Phonometrics*, the court upheld the ruling for Section 1927 attorney's fees, particularly because the Federal Circuit previously ruled on the claim construction issue that the plaintiff presented and warned them against continued litigation on an issue that it had previously decided. *Id.* at 221. In that *Phonometrics* decision, the Federal District Court of Appeals referenced a separate matter involving the same plaintiff, finding that their claim on the underlying patent was vexatious, unjustified, and conducted in bad faith in *Phonometrics, Inc. v. Northern Telecom Inc.*, 133 F.3d 1459 (Fed. Cir. 1998). *Id.* at 220. This case predated the decision that came later in *Phonometrics I*. The court in *Phonometrics I* found that the vexatious conduct by the attorneys and the unnecessary litigation from the case itself satisfied both the standard required for sanctions under Section 1927 as well as Section 285, given the responsibility of the attorneys to litigate responsibly and not proceed in the face of a failed suit. *See id.* at 221.

Similar behavior occurred here and therefore Section 1927 sanctions are warranted. While the Court takes no pleasure in imposing sanctions on Attorney Victoria Brieant, especially in light of the representation by defense counsel that not only had Attorney Brieant been friendly and helpful during the case, but she avoided additional litigation insofar that she did not seek an entry of default when the record suggested she could. However, in many other respects Attorney Brieant, as the only counsel of record in this matter for the plaintiff, unreasonably and without sufficient diligence allowed this matter to proceed when all facts compelled a different response. For example, at the hearing in this matter, Attorney Brieant was asked about the substance of communications between NCR and her client to determine whether Defendant was indeed a beneficiary under the settlement agreement between her client and NCR such that the claims in this matter were improvidently brought. Attorney Brieant was unable to answer the question instead deferring to Attorney Ramey who communicated with NCR on mCom's behalf. Attorney Brieant indicated that she was neither copied nor did a diligent inquiry into the content of those communications, which, given the effect of those communications on this case, should have been led or thoroughly probed into by Attorney Brieant.

Attorney Brieant's conduct resulted from following the lead of Attorney William Ramey. Operating behind the scenes and driving the process, attorneys for the Defendant often found themselves working with Attorney Ramey, who never filed a notice of appearance or attempted to *pro hac vice* himself as a party to the case. Perhaps this is because of Attorney Ramey's extensive issues with the American legal

11

system, including allegations of improper practice of law and a failure to properly obtain *pro hac vice* admission as recently as 2024. *See, e.g., Koji IP, LLC v. Renesas Electronics America, Inc.*, No. 24-cv-03089, 2024 WL 4008753 (N.D. Cal. August 29, 2024) (ordering Attorney Ramey to show cause for consistently failing to properly admit himself as counsel in an action for a state where he was not admitted to the local bar). Despite failing to move for *pro hac vice* admission or otherwise appearing in this matter, Attorney Ramey functioned in a primary role spearheading the interactions with Defendant's counsel, while Brieant took a back-seat.

Moreover, Attorney Brieant has been admonished before through Administrative Order 2023-54 for a case involving her actions (or lack thereof) as local counsel on a *pro hac vice* matter. In light of the repeated behavior, the Court is compelled to take more corrective action to encourage Attorney Brieant to undertake a more thorough vetting process of out-of-state counsel and the matters they seek to litigate in future court proceedings. The adage "if you lie down with dogs, you can expect to wake up with fleas" rings true here. Particularly given the knowledge that Attorney Ramey had of the rejection from PTAB, the reliance of the remaining patent claims on the underlying patent material that PTAB invalidated, and the NCR license agreement, the conduct from the attorneys in this case rises to the level of vexatious and unnecessary. As such, it is the recommendation of this Court to impose Section 1927 sanctions.

### C. Timeliness of Motion

As noted above, Plaintiff also tries to avoid the imposition of fees by asserting that Defendant's Motion for Attorney's Fees is untimely. Plaintiff states that Federal Rule of Civil Procedure 54(d)(2) provides that a motion for attorney's fees must be filed within fourteen days after the entry of judgment. This ignores the remainder of the statute, which also provides for special procedures by local rule to allow for rulings on attorney's fees. Fed. R. Civ. P. 54(d)(2)(D). The Local Rules provide for a 60-day window for the filing of motions for attorney's fees. S.D. Fla. L. R. 7.3. Accordingly, the Court finds that Defendant timely filed its Motion.

**D. Reasonableness of Fees**

After determining entitlement to attorney's fees, the Court is then tasked with determining the reasonableness of the requested amount of fees. Courts typically begin this analysis with the "lodestar" method, which is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *See Hensley*, 461 U.S. at 434; *Thornton v. Wolpoff & Abramson, L.L.P.*, 312 F. App'x 161, 163-64 (11th Cir. 2008). Once that number is determined, it carries a presumption of reasonableness. *See Blum v. Stenson*, 465 U.S. 886, 897 (1984). The lodestar amount may be adjusted by courts upward or downward based on other considerations. *Hensley*, 461 U.S. at 433-37.

To determine appropriate fees, courts are guided by the decision in *Johnson v. Ga. Hwy. Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)[2], which lays out twelve

---

[2] Fifth Circuit cases decided on or before September 30, 1981, are binding precedent in the Eleventh Circuit unless they have been overruled by the Eleventh Circuit judges sitting en banc. *Bonner v. City of Prichard*, 661 F.2d 1206 (1981).

13

factors for consideration: 1) the time and labor required, 2) the novelty and difficulty of the questions, 3) the skill requisite to perform the legal service properly, 4) the preclusion of other employment by the attorney due to the acceptance of the case, 5) the customary fee, 6) whether the fee is fixed or contingent, 7) time limitations imposed by the client or the circumstances, 8) the amount involved and the results obtained, 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *See also Mallory v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996) (applying the *Johnson* factors in determining appropriate attorney's fees). This set of factors has since been used in subsequent Supreme Court cases, although it is not an all-encompassing list of factors to determine reasonableness of fees. *See Blanchard v. Bergeron*, 489 U.S. 87, 91-93 (1989). The moving party for attorney's fees bears the responsibility of documenting the reasonableness of the hours worked on a case and the hourly rate. *A.C.L.U. of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999).

### 1. Reasonable Hourly Rate

A reasonable hourly rate is measured by "prevailing market rates in the relevant community." *Blum*, 465 U.S. at 895. The Court is considered to be the expert in determining the issue of hourly rates in its community and may apply its own knowledge and experience to form an independent judgment about the appropriate fee rate. *See Ikpe v. Kreative Therapy Rehab Ctr., Inc.*, No. 19-23217-CIV, 2019 WL 1369502, at *2 (S.D. Fla. Mar. 20, 2019) (citing *Norman v. Hous. Auth. Of*

*Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988)). Determining market rates requires the court to consider the *Johnson* factors in making its determination. *See 5AIF Maple 2 LLC v. 5725 Lagorce Partners LLC*, No. 21-20298-CIV, 2021 WL 7502576, at *2 (S.D. Fla. July 29, 2021) (citing to *Dillard v. City of Elba*, 863 F. Supp. 1550, 1553 (M.D. Ala. 1993)). Regardless of a party's lack of opposition to a proposed hourly rate or time expended on a case, the Court must ensure that the fee it awards are reasonable. *See Valley v. Ocean Sky Limo*, 82 F. Supp. 3d 1321, 1325 (S.D. Fla. 2015).

The Defendant in the present case presented a reasonable hourly rate for the individuals involved in the litigation process. The hourly rates proposed in their motion are as follows: $550/hour for Ted Whitlock, a registered patent attorney with Florida Bar Board Certification in Intellectual Property Law since 2008 and over 30 years of experience as an attorney; $450-$475/hour for Michael Santucci, who has 25 years working on business and intellectual property matters and is a managing attorney at the firm tasked with representing CNBFL; $450/hour for Elijah Levitt, who has practiced law for 20 years and was previously a Miami-Dade County Judge; $350/hour for associate Cintia Calevoso, who has nearly 14 years of legal experience; $325/hour for associate Salvatore Fazio, who has practiced for almost 8 years; and rates of $135/hour, $150/hour, and $200/hour for paralegal Joanna Lubczanska, who has 24 years of work experience in the legal field. *See* ECF No. 38-2. Importantly, Plaintiff did not dispute any of these proposed rates in their Response, electing to only challenge the validity of any fee award at all under 35 U.S.C. § 285 and 28 U.S.C.

§ 1927. On its own review, the Court finds that the rates requested are reasonable in light of the litigation required in the case, the expertise and experience of the attorneys and staff involved, and the quality of the work done in the case. The Court therefore adopts the rates requested by the Defendant as reasonable.

### 2. Reasonable Hours Expended

The Court must next evaluate the reasonableness of the total hours expended by defense counsel on the case. Defendant, as the party requesting fees, bears the burden of providing the Court with sufficiently detailed records so that the Court can assess the time claimed for each activity. *See Hermosilla v. Coca-Cola Co.*, No. 10-21418-CIV, 2011 WL 9364952, at *14 (S.D. Fla. July 15, 2011) (citing *Barnes*, 168 F.3d at 427, 432-33). Defendant also must use sound judgment and exclude hours that would be unreasonable to bill a client. *See Norman*, 836 F.2d at 1301. The Court must also exclude excessive or redundant hours included in the final billing. *Id*. at 1303. If the hours billed are determined to be unreasonably high, the Court has two options: conduct an hour-by-hour analysis or reduce the requested hours by an across the board cut. *See Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1351-52 (11th Cir. 2008). Judges are given discretion and must exercise judgment, as there is no specific formula or rule in making fee determinations. *See Hensley*, 461 U.S. at 436. The goal is not to become perfect accountants and to proceed to the ledger of hours with a microscope trained to each minute entry, but to achieve a fair measure of the hours worked and the litigation conducted. *See Fox v. Vice*, 563 U.S. 826, 838 (2011) (Courts "need not, and indeed should not, become green-eyeshade accountants. The essential

goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.").

Plaintiff had the opportunity to object to any amount of time or hours and declined to do so in their Response. This does not abdicate the court's responsibility to review the time sheets provided by the Defendant in its fee amount request. *See Valley*, 82 F. Supp. 3d at 1325. Upon review of the billing statements provided by the Defendant, the Court finds that the hours and time spent on this case to be reasonable considering the work required. The Defendant's ledger appears accurate and credible. Additionally, in the Hearing held on this matter, the Defendant added hours to reflect the work conducted to prepare for and litigate. The Court finds this amount of time to be reasonable as well, and adds the requested time to the final billing.

### 3. Allocation of Fees

In cases where both Section 285 fees and Section 1927 fees are awarded, courts have held that liability for fees cannot be joint and several. *See Phonometrics, Inc.*, 64 F. App'x. at 222. As such, the Court is now required to determine how to allocate the fees, and is guided by determining at what juncture counsel was, or should have been, on notice to conduct a more diligent search to determine if viable claims existed in order to avoid engaging in unreasonable conduct that multiplied the proceedings.

The Court finds the natural demarcation to be February 26, 2024 – the date of the filing of the Amended Complaint. At the time of the filing of the Amended Complaint, Attorney Brieant knew or should have known of several key points: the PTAB decision, the statements from defense counsel about the existence of the NCR

17

license, the substantive arguments for Defendant's original motion to dismiss, and the striking of the original complaint by the District Court as "shotgun pleadings." Attorneys are obligated to zealously advocate for their clients, but there is a point where every bar-card-carrying attorney must be able to tell his/her clients that their claim has no merit and that they will not continue to frivolously litigate. The Amended Complaint crossed that Rubicon and created increasingly vexatious litigation.

At the time of filing the Motion for Attorney's Fees, the total amount incurred for costs and fees by Defendant amounted to $72,508.50. The additional litigation from the Motion for Attorney's fees and subsequent hearing raised the total to $87,111.02. In totaling the billing that Defendant incurred prior to the receipt of the First Amended Complaint on February 26, 2024, the bill amount is $33,986.43. The remainder of billing that occurred after this point amounts to $53,124.59, which includes $2,255 in expert witness fees for the use of Mark Johnson, Esq. The expert witness fee, however, will be excluded because his expert services ended up not being necessary since Plaintiff never challenged defense counsel's fee rates or incurred fees. Following the Court's previous reasoning, the appropriate split based on the initial suit and the subsequent continuation of frivolous litigation, the Court believes this is the most reasonable split of the costs and fees.

### III. Conclusion

For the reasons stated above, the Court **RECOMMENDS** that the District Court **GRANT** Defendant's Motion for Attorney's Fees Against Plaintiff and award

the amount of $33,986.43 under the provision for an "exceptional" case under 35 U.S.C. § 285 and $50,619.59 under 28 U.S.C. § 1927.

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1.

**DONE and ORDERED** in Chambers in Miami, Florida on this 11th day of March, 2025.

_____
**ENJOLIQUÉ A. LETT**
**UNITED STATES MAGISTRATE JUDGE**

cc: All Counsel of Record